MOLAISON, J.
Plaintiff, Gina McClain, appeals a trial court judgment granting an exception of no cause of action in favor of defendant, V. J. Investments, LLC ("VJI"), thereby dismissing her claims against VJI to annul the transfer of immovable property, with prejudice, and canceling the notice of lis pendens recorded in the records of the Jefferson Parish Mortgage Office. For the following reasons, we affirm.
FACTUAL BACKGROUND AND PROCEDURAL HISTORY
Defendant, NMP, LLC ("NMP"),[1] through its managing member, defendant, Jessica Haggard, borrowed the sum of $45,000.00 from Ms. McClain in order to purchase a house situated at 13 Sarah Street in Westwego, Louisiana (the "Property") from the seller, Federal Home Loan Mortgage Corporation ("Federal Home"). According to the Cash Sale Without Warranty, which was executed on February 24, 2016 and recorded in the public records of Jefferson Parish on March 1, 2016, NMP purchased the property from Federal Home "for [$48,000.00], cash in hand paid, for which acquittance [was] [t]herein granted."[2]
As evidence of NMP's $45,000.00 loan from Ms. McClain to purchase the Property, NMP executed a "Promissory Note"
*413 dated February 23, 2016, wherein NMP agreed that the "obligation would be secured by a 'Deed of Trust' [i.e., a mortgage] on the Property to be executed and recorded in Jefferson Parish, Louisiana." Ms. McClain entrusted the preparation, execution and recordation of the Deed of Trust [hereinafter referred to interchangeably with "the mortgage"] to Ms. Haggard, NMP's managing member.
After NMP failed to pay the monthly installments and the full sum of the loan when due in accordance with the terms of the Promissory Note, Ms. McClain retained legal counsel to pursue collection of the money owed and, if necessary, was prepared to seize and sell the Property subject to the Deed of Trust (or "mortgage"). Unfortunately, in the process of doing so, Ms. McClain learned that not only had NMP failed to execute or record the mortgage on the Property, apparently Ms. Haggard never even prepared one, and had not otherwise perfected any recorded security interest in the Property.[3] Consequently, no mortgage of record on the Property exists.
Ms. McClain, through counsel, made several attempts to reach an agreement with Ms. Haggard to repay the loan and to enforce her obligation to execute and record a security interest in the Property to no avail. On or about February 9, 2017, communications between the parties ceased. Consequently, on March 2, 2017, Ms. McClain filed the instant suit against NMP and Jessica Haggard seeking to enforce the Promissory Note, for declaratory relief to order NMP to execute and record a mortgage on the Property, and for damages "[a]rising [o]ut of [f]raudulent [m]isconduct." Additionally, in the event NMP sought to transfer the Property, on March 28, 2017, Ms. McClain filed a notice of lis pendens , in order to place any prospective purchaser of the Property on notice of litigation relating to the Property. The notice of lis pendens recorded by Ms. McClain provided the following:
Please take notice that Gina McClain has filed in the above numbered proceeding a petition to , inter alia , assert a security interest in the [P]roperty .... [Emphasis supplied.]
Ms. McClain alleges that NMP, acting through Ms. Haggard, transferred the Property by "Quit Claim" to Statler-Waldorf, LLC ("Statler"), another entity co-owned by Ms. Haggard, for the sum of $1.00. The transfer of the Property was recorded in the public records of Jefferson Parish on February 15, 2017, prior to the recordation of the notice of lis pendens . According to Ms. McClain, the "Quit Claim" transfer took place without her knowledge or consent, and was "clearly a shell game" made "with the intent of selling the Property to a third party and keep[ing] for the benefit of Jessica Haggard and her entity(ies) all of the profits therefrom, to the detriment of [Ms. McClain] and in derogation of [her] rights against Haggard and NMP."
Unbeknownst to Ms. McClain, on April 10, 2017, Statler sold the Property to defendant, VJI, for $60,000.00 pursuant to an Act of Cash Sale.[4] The act of sale was filed into the Jefferson Parish conveyance records on April 11, 2017. Ms. McClain contends that the first she learned of Statler's sale of the Property to VJI was on May 1, 2017. On that day, the closing attorney *414 handling the sale for VJI notified Ms. McClain's counsel that, when updating the mortgage certificate, it was discovered that a notice of lis pendens had been filed on Ms. McClain's behalf two weeks prior to the closing of the sale. After further review of Jefferson Parish's public records, counsel for Ms. McClain discovered the previous sale of the Property from NMP to Statler.
Ms. McClain then filed a "Supplemental, Amending, and Restated" petition on October 24, 2017 adding Statler and VJI as defendants. The petition states that VJI was being added "for the reason that its title to the [Property] may be adversely affected by the resolution of some or all of the issues in this case ...." In her amending petition, Ms. McClain asserts several claims against NMP, Jessica Haggard, and/or Statler, and seeks the following relief against them: a judgment against NMP enforcing the Promissory Note; a judgment against NMP and Ms. Haggard for fraudulently inducing Ms. McClain to loan NMP money to purchase the Property by representing that Ms. Haggard would prepare, execute and record a Deed of Trust, or mortgage, against the Property; and, a judgment against NMP, Ms. Haggard, and Statler disgorging them of all profits and benefits received from their fraudulent transfer of the Property for $60,000. None of these claims involve VJI.
In the claims made by Ms. McClain against or involving VJI, she seeks a judgment declaring her security interest in the Property, retroactive to the date NMP purchased the Property. Ms. McClain also seeks a judgment annulling the transfer of the Property from NMP to Statler,[5] which she contends would then annul Statler's transfer of the Property to VJI, and obligate Statler to return to VJI the price VJI paid for the Property.
On January 10, 2018, in response to Ms. McClain's supplemental, amending, and restated petition, VJI filed an exception of no cause of action arguing that, under the public records doctrine, its Property cannot be encumbered by a mortgage that was not recorded when VJI purchased the Property. Additionally, VJI argued that, as an innocent third party purchaser of the Property for value, it was entitled to rely on the face of the public records. Here, those records evidenced a prior transfer of the Property from NMP to Statler, the entity who subsequently sold the Property to VJI. VJI also claimed that Ms. McClain's notice of lis pendens was defective because it did not contain the name of the person or entity against whom it was to be effective, i.e. , Statler, and, thus, without it, there was no chance of VJI obtaining notice of the lis pendens against the Property in the public records.
VJI's exception of no cause of action came for hearing on April 10, 2018. At the close of the hearing, the trial court sustained VJI's exception of no cause of action based on its determination that "there was never a mortgage filed in this matter," and that the notice of lis pendens was "deficient for failure to note the name of the actual owner of this property." The trial court issued a written judgment on April 23, 2018, in favor of VJI sustaining its exception of no cause of action and dismissing Ms. McClain's claims against it, with prejudice. The judgment further ordered *415 that the notice of lis pendens be canceled from the public records.
It is from this judgment that Ms. McClain timely filed the instant appeal.
ASSIGNMENTS OF ERROR
On appeal, Ms. McClain avers the trial court erred: (1) in finding the notice of lis pendens deficient because it failed to contain the name of the record owner of the property; (2) in granting VJI's exception of no cause of action dismissing her claims against it and canceling the notice of lis pendens on grounds that no mortgage or security interest was filed against the Property; and, alternatively, (3) in failing to take into consideration the fraud exception to the Louisiana public records doctrine.
LAW AND DISCUSSION
Standard of Review
An appellate court reviews the judgment sustaining a peremptory exception of no cause of action de novo , because the exception raises a question of law and the trial court's decision is based only on the sufficiency of the petition. In re Succession of Gendron , 17-216 (La. 12/27/17), 236 So.3d 802, 807. For purposes of the peremptory exception of no cause of action, a "cause of action" refers to the operative facts which give rise to the plaintiff's right to judicially assert an action against the defendant. Executone Sys. Co. of La. v. Jefferson Parish Hosp. Serv. Dist. No. 2 for the Parish of Jefferson , 15-569 (La. App. 5 Cir. 2/24/16), 186 So.3d 1210, 1215, writ denied , 16-0569 (La. 5/13/16), 191 So.3d 1059. The function of an exception of no cause of action is designed to test the legal sufficiency of a petition by determining whether a party is afforded a remedy in law against the defendant based on the facts alleged in the pleading. Jackson v. City of New Orleans , 12-2742 (La. 1/28/14), 144 So.3d 876, 895. All well-pleaded allegations of fact are accepted as true and correct, and all doubts are resolved in favor of the sufficiency of the petition as to afford litigants their day in court. Id. The burden of demonstrating that a petition fails to state a cause of action is a question of law, and a de novo standard is applied to the review of legal questions; the reviewing court renders a judgment based on the record without deference to the legal conclusions of the lower court. Id.
The Notice of Lis Pendens
Ms. McClain avers the trial court legally erred in finding her notice of lis pendens to be defective and ordering its cancellation on the basis that it did not identify the name of the record owner.[6] Because we find the trial court's judgment ordering the cancellation of the notice was proper on other grounds, we do not address the merits of whether the amendment to La. C.C.P. art 3572, effective July 1, 2006-which requires that the notice of lis pendens "show[ ] the name of the persons against whom it is to be effective"-is tantamount to requiring that the name of the property's record owner be included in order for the notice to be effective against third party purchasers.
Specifically, based upon our de novo review of the record, we find that Ms. McClain's notice of lis pendens was ineffective on the date she filed and had it recorded because the "persons against whom it [was] to be effective" no longer had any remaining interest in the Property.
*416 The purpose of the notice of lis pendens is to give effective notice to third persons of the pendency of an action affecting title to, or asserting a mortgage or lien on, immovable property. La. C.C.P. art. 3751.[7] The sole purpose of the notice is to inform the general public of the precise property involved in the litigation and the object or purpose of the suit with respect to the property concerned. L.E.C., Inc. v. Collins , 332 So.2d 565 (La. App. 1st Cir. 1976). The recordation of the notice of lis pendens makes the outcome of the suit as to which notice is given binding on third parties. La. C.C.P. art. 3751 ; Campbell v. Melton , 01-2578 (La. 5/14/02), 817 So.2d 69, 74 n. 4.
For a notice of lis pendens to be proper and effective against third parties, it is mandatory that the pending litigation affect title to or assert a mortgage or privilege on immovable property. La. C.C.P. art. 3751 ; Albritton v. Albritton , 538 So.2d 654, 655 (La. App. 1st Cir. 1988), writ denied, 541 So.2d 901 (La. 1989). Moreover, to be effective, the notice required by La. C.C.P. art. 3751 must be in proper form and comply with the requirements set forth La. C.C.P. art. 3752.[8] To allow an illegal or improper notice to remain recorded until the conclusion of the pending litigation would hamper or even prevent a land owner in his efforts to freely encumber or dispose of his property upon which the illegal or improper notice is recorded. Karst v. Fryar , 430 So.2d 318, 320-321 (La. App. 3rd Cir. 1983).
In the instant case, we find that the notice of lis pendens filed by Ms. McClain on March 28, 2017-which gave notice of the underlying suit against NMP and Ms. Haggard seeking to require NMP to execute and record a mortgage or security interest against the Property in the future-did not, and could not , affect title to the Property, which was no longer owned by either defendant, nor did Ms. McClain have an existing mortgage or lien to assert on the Property. Consequently, the notice of lis pendens was improper and without legal effect and, as such, it was proper for the trial court to order its cancellation. To reach this conclusion, the various transfers of the Property and the dates thereof are significant:
February 23, 2016 :
NMP executed a Promissory Note wherein NMP agreed that the $45,000 loan obligation to Ms. McClain for NMP's purchase of the Property from Federal Home would be secured by a Deed of Trust on the Property in favor of Ms. McClain; NMP agreed to prepare, execute and record the Deed of Trust.
March 1, 2016 :
NMP recorded the previously executed Cash Sale for the purchase of the Property from Federal Home in the Jefferson Parish records. The sale of *417 the Property was for $48,000.00 "cash in hand paid, for which acquittance [was] [t]herein granted" by Federal Home to NMP.
February 15, 2017 :
NMP transferred (quitclaimed) its ownership interest in the Property to Statler. At the time of the transfer, no mortgage or security interest in favor of Ms. McClain was recorded against the Property; thus, Statler acquired the Property free and clear of any such encumbrance.
February 15, 2017:
Statler recorded the transfer of the Property from NMP, thereby divesting NMP of all ownership interest in the Property. Consequently, Ms. McClain's right to enforce NMP's obligation to execute and record a mortgage or security interest against the Property ceased on this date as NMP no longer owned any interest in the Property; Statler was the sole owner of the Property.[9]
March 2, 2017:
Ms. McClain filed suit against NMP and Jessica Haggard seeking to enforce the Promissory Note and repayment of the loan, for declaratory relief requiring NMP to execute and record a mortgage on the Property, and for damages for fraudulent inducement.
March 28, 2017:
Ms. McClain filed and recorded a notice of lis pendens against the Property seeking to "assert a security interest in the [P]roperty " and naming NMP and Jessica Haggard as the persons against whom the notice was to be effective. Importantly, on this date NMP no longer owned the Property upon which Ms. McClain was seeking to assert a security interest, having been divested of ownership by virtue of the February 15, 2017 quitclaim to Statler. On March 28, 2017, according to the public records, Statler owned the property free and clear of any encumbrances. Statler's name is not included in the notice of lis pendens . At no time did Ms. Haggard (in her individual capacity) ever possess an ownership interest in the Property. No mortgage or security interest was ever recorded against the Property in favor of Ms. McClain while it was owned by NMP. Because NMP possessed no ownership interest in the Property and could not legally impose a mortgage on property it did not own at the time the notice of lis pendens was filed , no judgment obtained by Ms. McClain for the claims she asserted in her March 2, 2017 suit against NMP and/or Ms. Haggard (i.e. to enforce the Promissory Note and repayment of the loan, for declaratory relief requiring NMP to execute and record a mortgage on the Property, and for damages for fraudulent inducement) would or could affect title to the Property. See La. C.C. art. 3290.[10]
April 10, 2017 :
Statler, who, according to the public records, having previously acquired the Property unencumbered from *418 NMP, sold the Property for value to VJI, a third party purchaser.
Based upon this timeline, even assuming Ms. McClain's notice of lis pendens fully complied with the requisites of La. C.C.P. art. 3752, we find the notice was without legal effect. As stated in La. C.C.P. art. 3751, the pending action or proceeding must affect title to or assert a mortgage or privilege against the immovable property. It is undisputed that Ms. McClain never had a security interest or mortgage on the Property. And, at the time Ms. McClain filed her original petition against NMP and Ms. Haggard seeking to enforce NMP's obligation to execute and record a mortgage against the Property, the specific relief Ms. McClain was seeking against NMP and Ms. Haggard could not be granted because NMP had previously been divested of all ownership interests therein upon the February 15, 2017 transfer to Statler.
Put simply, NMP, the party who promised Ms. McClain to record a mortgage on the Property, could not legally record a mortgage on property it no longer owned. La. C.C. art. 3290. Thus, not only did Ms. McClain not have a mortgage on the Property, she could not get a judgment to enforce the obligation of NMP or Ms. Haggard to record one on this Property because neither party owned it. Consequently, at the time the notice of lis pendens was recorded on March 28, 2017, no judgment obtained by Ms. McClain against NMP or Ms. Haggard for the relief she was then seeking could in any way affect title to the Property because neither NMP nor Ms. Haggard-the persons identified in the notice against whom it was to be effective-had any ownership interest in the Property.
The mere fact that Ms. McClain recorded a notice of lis pendens on the Property does not mean that it was valid or effective as to third parties. Based upon our de novo review of the record, and for the reasons set forth above, we find the notice of lis pendens filed by Ms. McClain herein was neither valid nor effective. Accordingly, given the unique facts of this case, we find the trial court's judgment ordering the cancellation of the notice of lis pendens recorded against the Property was proper. This assignment of error lacks merit.
We note that cancellation of the notice of lis pendens does not in any way affect the claims Ms. McClain has made against NMP and Ms. Haggard for repayment of the loan and/or for monetary damages.
The Lack of a Mortgage, or Security Interest, Filed Against the Property
Ms. McClain also avers that the trial court legally erred in sustaining VJI's exception of no cause of action, dismissing her claims against it, and in canceling the notice of lis pendens , on the basis that there was no mortgage, or security interest, filed against the Property. Specifically, Ms. McClain avers that she pled sufficient facts in her original and amending petitions, which if proven, would entitle her to annul NMP's sale of the Property to Statler, thereby invalidating the allegedly fraudulent sale from Statler to VJI, and would entitle her to have the notice of lis pendens remain of record. According to Ms. McClain, the fact of whether or not a mortgage was actually recorded on the Property has no bearing on the annulment of the sale or on the requisite notice of lis pendens . We disagree.
Because we have concluded that the notice of lis pendens recorded by Ms. McClain in this case had no legal effect as against VJI, a third party, at the time it was recorded, and, thus, the outcome of the suit of which the notice was given could not bind third parties (i.e. , VJI), we must now determine whether Ms. McClain has any valid cause of action against VJI upon which the relief she seeks can be *419 granted-i.e. , to annul the sale of the Property from Statler to VJI and to have a security interest in her favor recorded against the Property. Based upon the unique facts of this case as set forth in her original and amending petitions, we find that the law does not afford Ms. McClain a legal remedy against VJI in this matter. See Williams v. Williams , 03-2089 (La. App. 1 Cir. 6/25/04), 886 So.2d 478, writ denied , 04-1891 (La. 10/29/04), 885 So.2d 596.
In her original petition seeking to enforce the promissory note, for declaratory relief seeking to have NMP ordered to execute and record a mortgage on the Property, and for damages arising out of fraudulent inducement, Ms. McClain specifically alleged that "NMP never executed or recorded a Trust Deed ... and has not otherwise perfected any recorded security interest in the Property." Thus, it is undisputed that no mortgage or other security interest was ever recorded against the Property to secure the debt owed by NMP to Ms. McClain.
On appeal, Ms. McClain contends that she "does not assert, or seek to enforce, the [unrecorded] security interest at issue between NMP, Jessica Haggard, and [Ms. McClain], against [VJI]." Instead, she claims that her sole contention against VJI is "that [VJI's] right to the Property at issue in this litigation is inferior" to her notice of lis pendens and, on that basis, she seeks to have the transfer of the Property from Statler to VJI annulled.
A review of Ms. McClain's supplemental petition, however, belies this contention as it clearly evidences that she was seeking, in part, to have the court declare her "security interest in the Property, retroactive to the date of NMP's purchase of the Property," which is the date NMP represented to Ms. McClain that NMP and Ms. Haggard would execute and record the security interest. Moreover, in her prayer for relief, Ms. McClain specifically prays for a judgment declaring that she is "entitled to recognition of a security interest in the Property," and further prays that the security interest be recorded. As evidenced by the express language set forth in her petitions, Ms. McClain was seeking not only to have the sales of the Property annulled, but also to have the court impose a mortgage against the Property.
A mortgage is a nonpossessory right created over property to secure the performance of an obligation. La. C.C. art. 3278. Upon failure of the obligor to perform the obligation secured by the mortgage, the mortgagee has the right to cause the property to be seized and sold in the manner provided by law and to have the proceeds applied toward satisfaction of the obligation in preference to the claims of others. La. C.C. art. 3279. Mortgages must be recorded with the recorder of mortgages in the parish where the immovable property is located in order to affect third persons. La. C.C. arts. 3346(A) and 3347. Moreover, as stated previously, because the establishment of a mortgage is an alienation or transfer of real rights in property, a conventional mortgage may be established only by a person having the power to alienate the property mortgaged. La. C.C. art. 3290.
The Louisiana public records doctrine generally expresses a public policy that an interest in real estate must be recorded in order to affect third persons. Simply put, an instrument in writing affecting immovable property that is not recorded is null and void except between the parties. Cimarex Energy Co. v. Mauboules , 09-1170 (La. 4/9/10), 40 So.3d 931, 943. In explaining the nature of the doctrine, the Louisiana Supreme Court has stated that third persons are not allowed to rely on what is contained in the public *420 records, but can rely on the absence from the public records of those interests that are required to be recorded. Id.
The primary focus of the public records doctrine is the protection of third persons against unrecorded instruments by denying the effects of the unrecorded interests, except as between the parties. La. C.C. arts. 3338 and 3343 ; Cimarex Energy, supra at 944,. An unrecorded act affecting immovable property has no legal effect as to third parties, even where the third party has actual knowledge of the unrecorded act, or if the unrecorded act is referred to in a recorded one. Judice-Henry-May Agency, Inc. v. Franklin , 376 So.2d 991, 992 (La. App. 1st Cir. 1979), writ denied , 381 So.2d 508 (La. 1980). Under the public records doctrine, a third party purchaser is entitled to rely on the absence from the public records of any unrecorded interest in the property and may rely on the ownership status of real property as reflected on the face of the public record. Neeb v. Graffagnino , 13-687 (La. App. 5 Cir. 2/26/14), 136 So.3d 353, 357.
The rule that what is not recorded is not effective does not mean that what is recorded is effective in all events. Stated another way, the fact that a document is recorded does not mean that it is valid and effective against third parties. See Evans v. City of Baton Rouge , 10-1364 (La. App. 1 Cir. 2/14/11), 68 So.3d 576, 580. Consequently, the failure of a creditor to record a mortgage on immovable property in the mortgage records results in the failure to protect that creditor's interest in the property as to third parties who are not a party to or personally bound by the mortgage. Similarly, the failure to record a proper or effective notice of lis pendens , as we have determined that Ms. McClain failed to do herein, results in the notice having no legal effect against third party purchasers and, as such, they are not bound by the outcome of the litigation that forms the basis of the improper notice. Williams v. Williams, supra.
In the case sub judice , it has been established that no mortgage or other security interest in favor of Ms. McClain has ever been executed much less recorded against the Property. It has also been established that, because neither NMP, Ms. Haggard, nor Statler has any ownership interest in the Property, they cannot now be ordered to execute or record a mortgage or security interest against the Property. It has further been established that at the time Statler purchased the Property from NMP and, thereafter, sold the Property to VJI, a third party, the public records showed no mortgage or security interest in Ms. McClain's favor encumbering the Property. Similarly, it has been established that the notice of lis pendens filed by Ms. McClain had no legal effect against VJI, a third party, at the time that it was recorded.
For these reasons, we conclude that Ms. McClain has no cause of action against VJI to record a mortgage or to recognize a security interest in her favor against the Property. We also conclude that Ms. McClain has no cause of action against VJI to annul either the transfer of the Property from NMP to Statler or the subsequent sale of the Property from Statler to VJI, because VJI's rights to the Property are not inferior to her notice of lis pendens , which we have determined had no legal effect against VJI.
We find the case of Williams v. Williams , supra , to be instructive and that it supports our legal conclusions reached herein. In Williams , the plaintiff, Agnes Williams, brought suit against the defendant, Michael Williams, seeking to annul an alleged donation of immovable property she made to Michael on grounds of ingratitude.
*421 Attached to her petition was a notice of lis pendens evidencing that it had been recorded in the conveyance records of Iberville Parish. Thereafter, Michael sold the property to a third party, Kimberly Legarde, whom Agnes later joined as a defendant. Kimberly filed an exception of no cause of action averring that the notice of lis pendens was ineffective because it had not been properly filed in the mortgage records as required by La. C.C.P. arts. 3751 and 3752. The trial court agreed and maintained Kimberly's exception, finding that the notice of lis pendens filed by Agnes was improper and, thus, was ineffective as to Kimberly, a third party purchaser. Accordingly, the trial court dismissed Agnes' claims against Kimberly and declared Kimberly to be the owner of the property. Williams , 886 So.2d at 480.
On appeal, Agnes challenged the trial court's judgment contending that the trial court erred in maintaining the exception of no cause of action because her recording of the notice of lis pendens in the conveyance records (rather than the mortgage records as required by La. C.C.P. art. 3752 ) was sufficient under the Louisiana public records doctrine to provide notice to a prospective third party purchaser that there was pending litigation involving the property being transferred.[11] The appellate court disagreed stating that, based on the requirements for a proper notice of lis pendens set forth in La. C.C.P. art. 3752, "effective notice is achieved only upon 'its registry in the mortgage records.' " Id. at 481. The court found that the general provisions of the public records doctrine did not relieve Agnes of her duty to comply with the clear and unambiguous provisions specifically governing the filing of a proper notice of lis pendens . Id. at 482. Consequently, the court agreed that the notice of lis pendens filed by Agnes was ineffective against third party purchasers and, as such, determined that Agnes failed to state a cause of action against Kimberly. Specifically, because of the improperly filed notice of lis pendens , the court held that Kimberly could not be bound by the outcome of the litigation between Agnes and Michael to annul the transfer of the property. Id.
As in Williams , the facts, as established by Ms. McClain's original petition, supplemental and amending petition, and attached notice of lis pendens and accepted as true for purposes of this exception, demonstrate that there was no mortgage or security interest recorded against the Property, and that at the time the notice of lis pendens was recorded, the parties against whom it was to be effective no longer had any ownership interest in the Property and, thus, the notice of lis pendens was without legal effect against third parties. Accordingly, we find that VJI has established that Ms. McClain has failed to state a cause of action against VJI upon which the relief she seeks can be granted.[12] In short, VJI cannot be bound by the *422 outcome of the litigation between Ms. McClain and Ms. Haggard, NMP and Statler to annul the transfers of the Property, where the lis pendens recorded by Ms. McClain was ineffective. Thus, we find the trial court did not err in sustaining VJI's exception of no cause of action and dismissing Ms. McClain's claims against it with prejudice. This assignment of error is without merit.
The Fraud Exception to the Public Records Doctrine
In her final assignment of error, Ms. McClain contends, in alternative, that the trial court erred in failing to find that the fraud exception to the public records doctrine applies in this case to save a mortgage in her favor that was never prepared, executed or recorded against the Property. We disagree.
An exception to the public records doctrine exists where a mortgage is cancelled from the public records through fraud, error, or mistake. Schudmak v. Prince Phillip Partnership , 573 So.2d 547, 550 (La. App. 5 Cir. 1991). The cancellation of a mortgage through fraud, error, or mistake, without the consent or knowledge of the holder, does not deprive the holder of his security, even as against third parties dealing with the property in good faith reliance on the public records. Id. Generally, those cases involving fraudulent or erroneous cancellations, in which the exception to the public records doctrine has been applied, involve mortgage holders who did not know or consent to the cancellation and who had no way of knowing of the wrongful cancellation of the mortgage, and no means of protecting their security interests in the property. Id. ; Central Bank v. Frost , 552 So.2d 508, 512 (La. App. 2nd Cir. 1989), writ denied, 556 So.2d 59 (La. 1990), cert. denied, 498 U.S. 827, 111 S.Ct. 83, 112 L.Ed.2d 55 (1990). In such cases, mortgage holders are limited in the methods available to correct the wrongful cancellations and to protect their security interests. Therefore, the exception to the public records doctrine is necessary in the interest of justice. Schudmak, 573 So.2d at 550-551.
In the case sub judice , to support her contention that the fraud exception applies, Ms. McClain relies on the Fourth Circuit's unpublished opinion in Deutsche Bank Nat'l Trust Co. v. McNamara , 17-173 (La. App. 4 Cir. 10/18/17), --- So.3d ----, 2017 WL 4700650, 2017 La. App. LEXIS 1867, writ denied , 17-1918 (La. 2/2/18), 235 So.3d 1111. McNamara holds that the public records doctrine does not provide protection for innocent third party purchasers where a mortgage does not appear from the public records due to fraud, error, or mistake. Specifically, Ms. McClain avers that the mortgage against the Property herein does not appear in the public records due to fraud on the part of Ms. Haggard, NMP and Statler.
Ms. McClain's reliance on McNamara , however, is misplaced as it is factually distinguishable from the instant case. In McNamara , the property owners mortgaged the property to a bank called WMC. Of significance is the fact that WMC's mortgage was actually prepared, executed and recorded in the public records . Thereafter, WMC sold the note and the mortgage to Deutsche Bank. The mortgage was later mistakenly canceled without the knowledge or consent of Deutsche Bank. Later, after having defaulted on their mortgage, the McNamaras sold the property to a third party. Deutsche Bank *423 then filed suit against the McNamaras and the third party purchaser seeking to reinstate the mortgage that was previously canceled by mistake. In reversing the trial court's judgment sustaining an exception of no cause of action in favor of the third party purchaser, the appellate court, applying the exception to the public records doctrine, held that if a mortgage was recorded and then canceled inadvertently through fraud or error, and without the mortgage holder's knowledge or consent, the mortgage holder states a valid cause of action against the third party purchaser to have the mortgage reinstated. McNamara , --- So.3d at ----, 2017 WL 4700650, at *5-6, 2017 La. App. LEXIS 1867 at 14.
In the instant matter, not only was a mortgage on the Property never executed or recorded, a mortgage was never even prepared. Unlike McNamara -which presupposes the existence of a recorded mortgage-in the case sub judice , because there was never a mortgage recorded, there was no mortgage to be canceled by fraud, error or mistake. Had Ms. McClain's mortgage or Deed of Trust on the Property been recorded, and then accidently or fraudulently canceled, then, arguably, McNamara would apply. Absent a mortgage, McNamara is inapplicable and the fraud and/or mistake exception to the public records doctrine does not apply. This assignment of error is without merit.
CONCLUSION
For the foregoing reasons, we affirm the trial court's judgment sustaining VJI's exception of no cause of action, dismissing Ms. McClain's claims against it, with prejudice, and ordering cancellation of the notice of lis pendens .
AFFIRMED.

NMP, LLC is an Oregon limited liability company that is not registered to do business in Louisiana. According to the allegations contained in the record, Ms. Haggard is the sole owner and managing member of NMP.

The Cash Sale Without Warranty reflects that NMP paid the purchase price in full and that, having done so, NMP's debt obligation to Federal Home for the purchase of the Property was discharged. Consequently, once the cash sale was recorded on March 1, 2016, the public records reflected that NMP paid the full purchase price for the Property to Federal Home and owned it without encumbrances thereon to secure the payment of the purchase price.

The Promissory Note was also never recorded.

The Act of Cash Sale reflects that Ms. Haggard appeared on behalf of Statler, pursuant to a Certificate of Authority executed by all of its members, and that Ms. Haggard executed all closing documents associated with Statler's sale of the Property to VJI.

Ms. McClain avers that NMP's act of transferring the Property to Statler, an asset of substantial value, which transfer occurred after NMP's obligation to Ms. McClain arose, caused or increased the insolvency of NMP, giving Ms. McClain the right to have the transfer of the Property annulled and the Property returned to NMP, pursuant to La. C.C. art. 2036 et seq.

In her arguments on appeal, Ms. McClain avers that the 2006 amendment to La. C.C.P. art. 3752 did not impose a requirement that the notice of lis pendens identify the name of the record owner of the property in order to be effective against third parties.

La. C.C.P. art. 3751 provides:
The pendency of an action or proceeding in any court, state or federal, in this state affecting the title to, or asserting a mortgage or privilege on, immovable property does not constitute notice to a third person not a party thereto unless a notice of pendency of the action or proceeding is made, and filed or recorded, as required by Article 3752.

La. C.C.P. art. 3752 provides:
The notice referred to in Article 3751 shall be in writing, signed by the plaintiff, defendant, or other party to the action or proceeding who desires to have the notice recorded, or by a counsel of record for such party showing the name of the persons against whom it is to be effective, the name of the court in which the action or proceeding has been filed, the title, docket number, date of filing, and object thereof, and the description of the property sought to be affected thereby.

Though Ms. Haggard was the sole managing member of NMP, and a co-owner of Statler, the two limited liability companies are wholly separate and distinct legal entities.

The establishment of a mortgage is an alienation or transfer or real rights in the property. Pursuant to La. C.C. art. 3290, "[a] conventional mortgage may be established only by a person having the power to alienate the property mortgaged." [Emphasis supplied.]

The Louisiana's public records doctrine, embodied in La. R.S. 9:2721 et seq ., provides that no acts concerning immovable property shall have effect against third parties until deposited in the office of the parish recorder or register of conveyances of the parish where the immovable property is located. See La. R.S. 9:2721(A).

We are constrained to note that Ms. McClain's failure to ensure that the Deed of Trust or mortgage was properly executed and recorded against the Property; her failure to review the public records prior to filing the notice of lis pendens , wherein she would have been apprised that NMP had previously sold the Property to Statler; and her failure to amend her pleadings and the notice of lis pendens prior to Statler's sale of the Property to VJI to include that she was seeking to annul the transfer of the Property from NMP to Statler, and to add Statler as a "party against whom the notice was to be effective," all contributed to the loss of any cause of action she may have had against VJI upon which the relief she seeks could have been granted.